DANIEL MOYNAHAN, Respondent, *v.* JAMES W. BIRKETT, Appellant,
Impleaded with Others.

81 395
7ap508
7ap514

*Public contract — prices specified, and no bids received, for extra work — implied obligation to pay for work done for a county.*

A clause in a contract, let by the board of supervisors of a county to the lowest
bidder under the provisions of chapter 230 of the Laws of 1884, declared that
proposals and contracts must be understood to include and cover in full all the
several parts and appurtenances of the structure in question, so as to make a
complete and finished work on the location established for the same, and for
its complete use and operation, precluding all claims for extra work. It also
provides that additional payments may become due and payable for extra work
done in obtaining stable foundation, or for materials required to form necessary
artificial foundations, or on account of incidental or supplemental modification
of the plans, locations and grades ordered by the proper authority. "For such
extra work the contractor will be paid the following prices." Thereafter fol·
lowed the enumeration of certain specified kinds of work at certain specified
prices to be paid therefor.

*Held,* that the effect of such provision was to do away with all competition what-
ever between bidders so far as the extra work was concerned;

That the prices to be paid for extra work should have been arrived at as the
result of competitive bidding, instead of being fixed in advance by the public
authorities;

That such clause was illegal, and in an action brought by a taxpayer the county
treasurer of the county in which the work was done should be enjoined from
paying the contractor the amount claimed by him, for extra work done pursu-
ant to the provisions of such clause, at the rate therein specified.

A contractor agreed to do all the work of regulating, grading, curbing, gutter-
ing and macadamizing the roads at a certain specified place, and the
quantities mentioned in the contract were only the estimates of the public
authorities.

*Held,* that, if the contractor was obliged in the execution of the work to furnish
any material of the same kind, beyond the specified quantities, the obligation on
his part implied a corresponding obligation on the part of the authorities to
pay him for the material so furnished.

APPEAL by the defendant, James W. Birkett, from an order of
the Supreme Court, made at the Kings County Special Term and
entered in the office of the clerk of the county of Kings on the 10th
day of August, 1894, enjoining and restraining the treasurer of
Kings county from paying to said Birkett the amount of certain
claims mentioned in said order.

*James Troy,* for the appellant.

*Sanders Shanks,* for the respondent.

Present — BROWN, P. J., DYKMAN and CULLEN, JJ.

Order affirmed, with ten dollars costs on the opinion of Special
Term.

The following is the opinion of the Special Term:
WILLARD BARTLETT, J.:

On February 1, 1893, the board of supervisors of Kings county
entered into a contract with James W. Birkett, whereby Mr. Bir-
kett agreed to furnish certain materials and do certain work at the
county farm, at Kings Park, L. I., at prices which were specified
in the body of the contract.

The law providing for the establishment of the county farm
requires the board of supervisors to advertise for proposals for the
erection of the buildings and for the other improvements there, and
to award the contract to the lowest responsible bidder or bidders.
(Laws of 1884, chap. 230, § 3.)

This provision was obeyed in reference to Mr. Birkett's contract,
so far as the work was concerned which was mentioned in the con-
tract itself, as distinguished from the specifications.

The contract, however, refers to two sets of specifications.    One
set is known as general specifications B, and is expressly made a
part of the agreement.

Clause 37 of specifications B relates to extra work.    It declares
in the first place that proposals and contracts must be understood to
include and cover in full all the several parts and appurtenances of
such structure so as to make a complete and finished work on the
location established for the same, and for its complete use and oper-
ation, precluding all claims for extra work; but it goes on to pro-
vide that additional payments may become due and payable for
extra work done in obtaining stable foundation, or for materials
required to form necessary artificial foundations, or on account of
incidental or supplemental modification of the plans, locations and
grades ordered by the proper authority.    " For such extra work,"
says this clause, " the contractor will be paid the following prices:
For earth excavation, 25 cents per cubic yard.    For excavation of

foundations, including all necessary draining and bailing, 45 cents per cubic yard. For spruce or hemlock sheathing and shoring which may be ordered left in the ground, thirty-five dollars per thousand feet, board measure. For each cubic yard of rubble masonry, eight dollars. For each cubic yard of concrete, five dollars. For each cubic yard of brick masonry, twelve dollars."

The effect of this provision is to do away with all competition whatever between bidders, so far as extra work in concerned. The board of supervisors practically say to contractors who contemplate bidding in response to their invitation for proposals: "We will award the contract to the lowest responsible bidder for the work to be mentioned in the body of the contract; but if any extra work proves necessary, we will pay for it at the rates fixed in clause 37 of specifications B." In other words, they construe the statute as requiring a letting of the work to the lowest bidder only with reference to the main portion of a contract and not at all with reference to the extra work.

I think this is an erroneous construction. In order to carry out the true purpose and intent of the statute, it is the duty of the board to endeavor to get all the work under a contract, whether it be the principal part of the undertaking or additional labor which may be requisite, done at the lowest price at which a responsible person will agree to do it. If extra work is contemplated as likely to be needed, then the competing contractors should be invited to bid for that, as well as for the main work. The figures placed in clause 37 of specifications B, as the prices to be paid for extra work, should have been arrived at as the result of competitive bidding as were the figures in the body of the contract, instead of being fixed in advance by the public authorities.

The present action is a taxpayer's suit brought to prevent the payment to Mr. Birkett of three items which he claims under the contract in question. These items are, $17,100 for 38,000 cubic yards of sewer trenching, $32,725 for 935,000 feet of sheathing, and $25,401.42 for 12,829 square yards of granite pavement.

Mr. Birkett asserts that sewer trenching is the same thing as the excavation of foundations mentioned in clause 37 of specifications B, and that the sheathing is covered by the same clause. Assuming that he is right, the objection still remains that the board of super-

visors undertook to make this part of the contract without reference to the statutory requirement that the work should go to the lowest responsible bidder. Their action in so doing was in disregard of the law, as it seems to me, and hence he cannot be entitled to payment for the additional work mentioned in these two items at the rates fixed in clause 37.

In reference to the item of granite pavement, the case is different; gutters were mentioned in the main body of the contract, and Mr. Birkett's affidavit shows that the granite pavement was merely additional guttering which proved necessary and for which he charges at the same rate as he bid. The specifications declared that the schedules of quantities upon which the bids were based were approximate, as near as could be determined in advance. The agreement of the contractor was to do the whole work of regulating, grading, curbing, guttering and macadamizing the roads at the county farm. As in the case of *Sullivan* v. *President of Sing Sing* (122 N. Y. 389), the quantities mentioned in the contract were only the estimates of the municipal authorities, and if more material of the same sort was needed in any instance, the contractor was bound to furnish it. This obligation on his part implies the corresponding obligation on the part of the authorities to pay him for the material so furnished.

My conclusion is, that the clause in the contract fixing the prices for extra work without having invited bids on that subject is illegal, and that the payment of Mr. Birkett's claims for sewer trenching and sheathing at the rates specified in that clause must be enjoined, but that no sufficient cause has been shown for interfering with the payment of the claim for granite pavement.

The plaintiff, upon giving an undertaking in the usual form in the sum of $1,000, may have an injunction during the pendency of the action restraining the county treasurer from paying the claims of the defendant Birkett for the two items of extra work described in the pleading as sewer trenching and sheathing. The costs of this motion will abide the event of the action.